IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MANBINDER SINGH MINHAS,           )
                                  )      2:11-cv-03200-GEB-EFB
          Plaintiff,              )
                                  )
     v.                           )      ORDER
                                  )
TOM VILSACK, in his capacity as   )
Secretary of the United States    )
Department of Agriculture,        )
                                  )
          Defendant.              )
_____ )

          Plaintiff filed a motion on December 9, 2011, in which he
seeks to "stay enforcement of the administrative determination of
Defendant . . . to disqualify Plaintiff from participating in the
Supplemental Nutrition Assistance Program ('SNAP') . . . for six
months." (Mot. 1:4-7.) Defendant opposes the motion, arguing Plaintiff
"cannot satisfy [the applicable stay factors in] 7 U.S.C. § 2023, the
judicial review provision for Food Stamp enforcement actions, which
requires him to show both irreparable injury and a likelihood of
prevailing on the merits . . . ." (Opp'n 2:8-10.)

          Plaintiff is the owner of Dawes Wine & Spirits, which, prior
to its six-month disqualification, participated in SNAP, a program that
enables qualifying stores to accept food stamp benefits in exchange for
eligible food items. On February 1, 2011, the Food and Nutrition Service
("FNS") began a series of five investigative visits to Plaintiff's store

1

in which an agent attempted to purchase ineligible non-food items with a food stamp card. (Minhas Decl. Exs. A & B.) On four of the five visits, the agent was successful in purchasing ineligible non-food items with his food stamp card, each time from the same clerk. Id. In total, he purchased the following items: one box of Penley forks, one box of Penley spoons, three Chore boy sponges, and six boxes of Penley cutlery. Id. During these same visits, the agent unsuccessfully attempted to purchase a box of matches and a bottle of wine with his food stamp card. Id. The agent also attempted a cash transaction on his fifth visit, which was refused. Id.

On August 31, 2011, FNS sent Plaintiff a letter that detailed his store's violations of the SNAP program and stated the following:

> Your firm is charged with accepting SNAP benefits in exchange for merchandise, which, in addition to eligible foods, included common non-food items. The misuse of SNAP benefits noted in [the] Exhibits . . . violated Section 278.2(a) of the SNAP regulations (enclosed).
>
> Further, the violations in [these] Exhibits . . . warrant a disqualification period of six months (Section 278.6(e)(5)). Under certain conditions, FNS may impose a civil money penalty ("CMP") in lieu of a disqualification (Section 278.6(f)(1)).

(Minhas Decl. Ex. A.) On September 12, 2011, Plaintiff filed a reply to the August 31, 2011 letter and attended an administrative hearing. Id. ¶ 10. FNS sent Plaintiff a letter dated September 29, 2011, informing him that it has "determined that [Plaintiff] is not eligible for the CMP because there are other authorized retail stores in the area selling as large a variety of staple foods at comparable prices." Id. Ex. C. On October 5, 2011, Plaintiff filed a written request for review with FNS and on November 8, 2011, FNS sent Plaintiff the final agency decision of the FNS affirming the six-month disqualification previously imposed.

(Knox Decl. ¶¶ 3-7.) On December 1, 2011, Plaintiff filed this action in federal court, arguing the sanction imposed by FNS was arbitrary and capricious. (ECF No. 2.) Plaintiff does not dispute that the sale of ineligible items occurred. The six-month disqualification commenced on December 11, 2011.

Section 2023(a)(17) prescribes:

> During the pendency of such judicial review, or any appeal therefrom, the administrative action under review shall be and remain in full force and effect, unless on application to the court on not less than ten days' notice, and after hearing thereon and a consideration by the court of the applicant's likelihood of prevailing on the merits and of irreparable injury, the court temporarily stays such administrative action pending disposition of such trial or appeal.

7 U.S.C. § 2023(a)(17). Therefore, a court "may temporarily stay [an] administrative action if it determined that the aggrieved party will [likely] suffer irreparable injury *and* is likely to prevail on the merits of his case." <u>Poeng v. United States</u>, 167 F. Supp. 2d 1136, 1139 (S.D. Cal. 2001) (emphasis added).

Plaintiff argues he will prevail on the merits of his claims since Defendant's imposition of a six-month SNAP disqualification is arbitrary and capricious; specifically, Plaintiff argues the Administrative Review Officer did not rely on or consider any evidence of carelessness or poor supervision by the firm's management or ownership in the Final Agency Decision. (Mot. 8:6-14.) In determining whether to sanction a store, FNS regulations require it to consider "(1) whether the store has been previously warned of possible violations; (2) whether the charged violations indicate firm practice or result from the carelessness of clerical personnel; and (3) the type of ineligible items sold." <u>Id.</u> (citing 7 C.F.R. § 278.6(e)). The FNS shall "[d]isqualify the

1   firm for 6 months if it is to be the first sanction for the firm and the
2   evidence shows that personnel of the firm have committed violations such
3   as  but  not  limited  to  the  sale  of  common  nonfood  items  due  to
4   carelessness or poor supervision by the firm's ownership or management."
5   7 C.F.R. § 278.6(e)(5).

6       "[R]eview of the sanction imposed by the FNS is governed by
7   the arbitrary and capricious standard." Wong v. United States, 859 F.2d
8   129, 132 (9th Cir. 1988). "Under the arbitrary and capricious standard,
9   the  court  examines  the  sanction  imposed  by  the  FNS  in  light  of  the
10  administrative  record  to  judge  whether  the  agency  properly  applied  the
11  regulations and to determine whether the sanction is unwarranted in law
12  or  without  justification  in  fact."  Id.  (internal  quotation  marks
13  omitted).  "Although  [a  court]  may  uphold  a  decision  of  less  than  ideal
14  clarity  if  the  agency's  path  may  reasonably  be  discerned,  [it]  cannot
15  infer  an  agency's  reasoning  .  .  .  where  the  agency  failed  to  address
16  significant objections and alternative proposals." Beno v. Shalala, 30
17  F.3d 1057, 1073 (9th Cir. 1994). Further, a "reviewing court may not
18  substitute reasons for agency action that are not in the record." Ariz.
19  Cattle Growers Ass'n v. U.S. Fish & Wildlife, 273 F.3d 1229, 1236 (9th
20  Cir. 2001).

21      In  its  Final  Agency  Decision,  FNS  neither  provides  facts
22  supporting  its  conclusion  that  the  violations  were  the  result  of
23  carelessness or poor supervision nor responds to Plaintiff's objection
24  that the agency had not provided evidence supporting this conclusion. At
25  the  December 19, 2011 hearing on Plaintiff's motion to stay, Defendant
26  conceded that the Final Agency Decision did not include facts to support
27  a conclusion that the violations were the result of carelessness or poor
28  supervision. Although Defendant argues evidence is in the record that

supports this conclusion, the agency must "articulate[] a rational connection between the facts found and the choice made." <u>Ariz. Cattle Growers Ass'n</u>, 273 F.3d at 1236; <u>see also</u> <u>id.</u> ("Judicial review is meaningless, however, unless we carefully review the record to ensure that agency decisions are founded on a reasoned evaluation of the relevant factors.").

Further, the agency's response to Plaintiff's objection states as follows:

> With regard to this portion of the aforementioned contention, it cannot be accepted as a valid basis for dismissing any of the charges, or for mitigating the impact of those charges. Regardless of whom the ownership of a store may utilize to handle store business, the ownership is accountable for the proper training; [sic] monitoring and handling of SNAP benefit transactions. To allow store ownership to disclaim accountability for the acts of persons whom the ownership chooses to utilize to handle store business would render virtually meaningless the enforcement provisions of the Food and Nutrition Act of 2008 and the enforcement efforts of the USDA.

(Knox Decl. Ex. 4.) However, this statement does not address Plaintiff's objection, which was an insufficiency-of-the-evidence argument. Instead, the agency counters with a wholly non-responsive assertion regarding the accountability of ownership under the regulations. Therefore, the FNS "failed to address [a] significant objection" raised by Plaintiff. <u>Ariz. Cattle Growers Ass'n</u>, 273 F.3d at 1236. Since the Final Agency Decision neither provides facts supporting its conclusion nor responds to Plaintiff's objection, Plaintiff has shown a likelihood of success on the merits.

Further, Plaintiff argues he "is likely to suffer irreparable injury if the six-month disqualification is not stayed pending trial in this matter" since his claims will be moot, he will suffer substantial

loss of revenue, and he will be unable to recover damages for lost sales. (Mot. 5:26-27.) Plaintiff argues his action will be moot if the six-month disqualification is not stayed since "[t]he court has scheduled the Initial Scheduling Conference for March 26, 2012. By that date, more than 50% of the six-month SNAP disqualification will have taken place, unless the disqualification." Id. 6:9-14. Plaintiff also argues he "will suffer substantial loss of revenue if [the] six-month disqualification is not stayed." Id. 6:15-16. Plaintiff avers in a declaration that his "store processes approximately $8,500.00-9,000.00 in SNAP benefits every month" and that he "will lose approximately $51,000.00-$54,000.00 if the six-month disqualification is enforced." Id. 6:17-21. Plaintiff also avers "he will also lose much of the non-SNAP business because his SNAP customers will be forced to find another SNAP retailer to use their SNAP benefits." Id. 6:22-26.

Defendant counters, arguing Plaintiff has not shown irreparable injury since he "does not assert, let alone provide any evidence, that the disqualification will require him to close his store or fire its employees, or that he will lose almost 50% of his sales and that he is already operating at a loss[.]" (Opp'n 12:26-13:1.) Although "[i]n general, lost revenue does not constitute irreparable harm because an award of damages at the end of a case, if appropriate, will make a party whole[, t]hat general proposition does not apply here[.]" Jefferson Village Enter., Inc. v. United States, 2011 WL 740896, at *4 (E.D. Mich. Feb. 24, 2011); see also Cal. Pharm. Ass'n v. Maxwell-Jolly, 563 F.3d 847, 852 (9th Cir. 2009) ("Because the economic injury doctrine rests only on ordinary equity principles precluding injunctive relief where a remedy at law is adequate, it does not apply where, as here, the Hospital Plaintiffs can obtain no remedy in damages against the state

because of the Eleventh Amendment."). Under FNS regulations, "[i]f the disqualification action is reversed through administrative or judicial review, the Secretary shall not be liable for the value of any sales lost during the disqualification period." 7 C.F.R. § 279.7(d); see also Jefferson Village Enterprises, 2011 WL 740896, at *4 ("That the statute possibly bars the court from awarding damages to Plaintiff in the event it prevails compounds the concern of mootness."). Plaintiff's showing is sufficient to demonstrate he will likely suffer irreparable economic loss if the stay is not granted.

Therefore, Plaintiff's motion to stay is GRANTED, and the six-month disqualification is stayed until there is a final determination on the merits.

Dated:  December 20, 2011

GARLAND E. BURRELL, JR.
United States District Judge